[Civ. No. 34962. Second Dist., Div. Two. May 28, 1970.]

MARTHA H. ADDUDDELL, Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION, PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Respondent.

244

## COUNSEL

Ferguson & Regnier and Richard A. Regnier for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Anthony M. Summers, Deputy Attorney.General, for Defendant and Respondent.

## OPINION

**HERNDON, J.—** The sole issue presented by this appeal is whether appellant, the putative spouse of a deceased police officer, is entitled to the special death benefit payable to a "surviving spouse" under Government Code section 21364.

### *Statement Of The Facts*

The facts are undisputed. On October 2, 1966, Lieutenant Edwin A. Adduddell, sometimes referred to hereinafter as the decedent, died at the age of 42. For a period of 17½ years prior to his death he had been a police officer employed by the City of Oxnard. During the last 15 years of his life he was a local safety member of the Public Employees' Retirement System (hereinafter referred to as the System). As of the date of his death Lieutenant Adduddell's accumulated contributions to the System amounted to $9,576.04.

In 1946, the decedent was married to Edna P. Adduddell. Three children were born of this marriage, two of whom were under the age of 18 years at the time these proceedings were instituted. The marriage of Edna and the decedent was dissolved by a final decree of divorce entered *nunc pro tunc* on April 3, 1954.

Appellant, Martha Adduddell, and the decedent were married in Las Vegas, Nevada on April 13, 1954. Appellant previously thereto on June 9, 1951, had been married to one Alfred Doerfler. On February 6, 1954, Doerfler obtained a Mexican decree of divorce from appellant through a legal representative.

Appellant and the decedent lived together as man and wife for a period of 12½ years ending with his death on October 2, 1966. Four children were born of this union: Denise, born June 4, 1954; Sandra, born November 14, 1955; Debra, born August 23, 1957; and Marcy, born August 17, 1960. Appellant's good faith belief in the validity of her marriage to the decedent apparently is not questioned. It was stipulated that she was the

putative wife of the decedent and good faith is an explicit element in the definition of this status.

On January 3, 1955, the deceased officer officially designated appellant as the beneficiary of any death benefits payable by respondent.

## Administrative Proceedings

Following the death of Lieutenant Adduddell appellant filed with respondent an application for the special death benefit which is payable to the wife of a deceased safety member under the provisions of sections 21363 and 21364 of the Government Code. Section 21363 provides that "The special death benefit is payable if the deceased was a . . . local safety member, if his death was industrial, as determined by the appeals board, using the same procedure as in workmen's compensation hearings, and if there is a wife or child who qualifies under subdivision (b), Section 21364." Section 21364 provides in pertinent part as follows: "The special death benefit consists of: . . . (b) An amount . . . payable to the *surviving spouse* to whom he was married prior to sustaining the injury or disease resulting in death, as long as such spouse lives or until her remarriage; or if there is no *surviving spouse* or if such spouse dies or remarries before all children of the deceased member attain age 18, to his children under 18 collectively until every child shall have died, married or attained age 18. . . . (c) . . . 'Spouse' for purposes of this section means a wife or dependent husband. . . ." (Italics added.)

Appellant's application for the special death benefit was denied by respondent apparently on the theory that the Mexican divorce decree purporting to terminate her prior marriage to Doerfler was invalid with the result that she did not legally qualify as the surviving spouse of the decedent.

In the meantime respondent sought a ruling by the Workmen's Compensation Appeals Board to determine whether Lieutenant Adduddell's death resulted from an injury or disease arising out of and in the course of his employment. The Appeals Board determined that the death was industrially caused.

In due course appellant filed an administrative appeal from respondent's order denying her application for the special death benefits and the matter was heard by a hearing officer of the Office of Administrative Procedure. The hearing officer determined that appellant was the putative wife of the decedent and as such was entitled to payment of the special death benefit under sections 21363 and 21364 of the Government Code. Respondent rejected the hearing officer's decision on the legal issue but conceded the

correctness of the finding that appellant was the putative spouse of the deceased officer.

Thereafter respondent notified appellant that she would be granted a further hearing on her claim to the special death benefit. At this latter hearing appellant's case was again presented by her counsel and at the conclusion of the hearing respondent again denied appellant's application.

It is to be observed that the proceedings before the Workmen's Compensation Appeals Board resulted in findings including the following: (1) that Lieutenant Adduddell's death arose out of and occurred in the course of his employment; and (2) that the decedent "left surviving him, wholly dependent, his putative spouse, Martha H. Adduddell."

### Judicial Proceedings

Following the unfavorable decision of respondent, Board of Administration, appellant petitioned the court below for a writ of mandate directing respondent to set aside its decision and to pay appellant the special death benefit to which she asserted her right as the surviving spouse of the deceased officer. The alternative writ was issued. Respondent filed an answer and a memorandum of points and authorities in opposition to the petition.

When the matter came on for trial the administrative record was received in evidence. The cause having been argued and submitted, the trial court made findings of fact, all of which were consistent with those above recited. The court specifically found that appellant was a putative spouse and that Lieutenant Adduddell had officially designated her as the beneficiary of any death benefit payable by the System.

On the basis of its conclusions of law that a putative spouse is not entitled to the special death benefits provided by sections 21363 and 21364 of the Government Code and that the decedent's designation of appellant as beneficiary of said special death benefits is not applicable under said sections of the Government Code, it entered judgment denying appellant's petition for a peremptory writ of mandate. This appeal followed.

### A Putative Spouse Is a "Surviving Spouse" Within the Meaning of Government Code Section 21364.

We have concluded that the trial court erred in its conclusions of law and that persuasive California precedents dictate the conclusion that the words "surviving spouse" as used in Government Code section 21364 include a putative spouse.

It has been held that the words "surviving spouse" as used in Probate

Code section 201 include a putative wife (*Estate of Krone,* 83 Cal.App.2d 766, 769-770 [189 P.2d 741]; *Estate of Foy,* 109 Cal.App.2d 329, 332 [240 P.2d 685]), and that a putative spouse is a "surviving widow" under section 4702 of the Labor Code (*Brennfleck* v. *Workmen's Comp. App. Bd.,* 3 Cal.App.3d 666, 670 et seq. [84 Cal.Rptr. 50]).

In the last cited case a truck driver was injured in the scope of his employment and the injury proximately caused his death. His survivors included the wholly dependent putative spouse and three sons. The referee found that the decedent left surviving him a wholly dependent wife and the sons, and awarded them death benefits based on the assumption that the putative wife was the decedent's widow. The employer sought reconsideration of the award. On reconsideration the award was reduced by the Appeals Board on the basis of its holding that the putative spouse was not a "surviving widow" within the meaning of section 4702 of the Labor Code so that the provision of that section for a maximum death benefit of $20,500 to a surviving widow was not applicable. In annulling the award, the Court of Appeal cited and discussed numerous authorities including nearly all of those relied upon by appellant in the case at bench. The following language from *Brennfleck* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.App.3d 666, at pages 670-671, is particularly pertinent and is fully applicable to the case at bench by a parity of reasoning: "The exact question of whether a surviving putative spouse is a 'surviving widow' under section 4702 is a question of first impression in the courts of California. (1) From an early date our courts have held that a person who enters into an invalid marriage with another but believes that she (or he), is validly married is entitled to a share in the assets acquired during the course of the 'marriage' that would have been community property in a valid marriage. (*Coats* v. *Coats* (1911) 160 Cal. 671, 675, 678 [118 P. 441]; *Schneider* v. *Schneider* (1920) 183 Cal. 335, 341 [191 P. 533, 11 A.L.R. 1386]; see 4 Witkin, Summary of Cal. Law (7th ed. 1960) Community Property, §§ 8-12, pp. 2714-2720.) This rule applies whether the marriage is void or voidable. (*Schneider* v. *Schneider, supra,* at p. 341.) The reason for such division of the property is the fundamental unfairness which would result if one spouse were to retain all the property when the efforts of both were required to acquire it. Although there has been some difference in the amount of the 'community' assets awarded the de facto wife, it has been generally held that she takes the same share as a legal wife, being recognized as the surviving spouse for the purposes of succession under Probate Code section 201. (*Estate of Krone* (1948) 83 Cal.App.2d 766, 769-770 [189 P.2d 741]; *Estate of Foy* (1952) 109 Cal.App.2d 329, 332 [240 P.2d 685]; 4 Witkin, Summary of Cal. Law (7th ed. 1960) Community Property, § 10, pp. 2716, 2717.)

"The putative wife may bring an action for the wrongful death of the husband. (*Kunakoff* v. *Woods* (1958) 166 Cal.App.2d 59, 67 [332 P.2d 773].) There the putative wife brought an action for the wrongful death of her spouse. The trial court granted defendants' motion to dismiss the action as to her on the ground that she had no standing to maintain the action. Code of Civil Procedure section 377 limits persons who can bring an action for wrongful death to decedent's heirs or personal representatives, and the court determined that a putative spouse was not an 'heir.' The appellate court reasoned that since the putative spouse succeeds under Probate Code section 201 to the community estate, she is an 'heir' and is entitled to maintain an action for wrongful death. (*Kunakoff* v. *Woods, supra,* 166 Cal.App.2d at p. 67.) (2) It is therefore established that a putative spouse has the right to maintain an action for the death of her husband caused by any wrongful act or neglect of another."

It would unduly extend this opinion to quote at greater length from the *Brennfleck* opinion. Reference thereto will disclose that all of its reasoning and all of the precedents therein relied upon in support of the holding that a putative spouse is a "surviving widow" within the meaning of section 4702 of the Labor Code provide equal support for appellant's contention that she, as a putative spouse, is a "surviving spouse" within the meaning of section 21364 of the Government Code and therefore entitled to the death benefit for which that section provides.

Appellant's position in the case at bench is supported not only by the rules of statutory construction applied in the cited precedents but also by the dictates of equity and justice. Her stipulated status as a putative spouse is determinative of the fact that she entered into her marriage with the decedent in good faith and in the belief that her marriage was valid. (*Vallera* v. *Vallera,* 21 Cal.2d 681, 684 [134 P.2d 761]; *Estate of Long,* 198 Cal.App.2d 732, 738 [18 Cal.Rptr. 105].) She lived with the decedent as his wife for a period of more than 12½ years from the time of their marriage to the date of his death and she now has the care of the four minor children who are the issue of the marriage.

As indicated in *Brennfleck, supra,* at page 674, the cases in which there would be a potential conflict between the claims of putative and legal spouses are rare and it appears that when such problems have arisen they have been found readily susceptible of equitable resolution. In the case at bench, however, no such problem exists because the legality of Lieutenant Adduddell's divorce from his former wife is unquestioned and she makes no conflicting claim.

█ Finally, we find no merit in respondent's contention that since the Legislature made specific provision for a putative spouse in Labor Code

section 3503 and failed to make an equally specific provision in Government Code section 21364, either as originally enacted or as subsequently amended, the legislative intent to deny the putative spouse the benefits of the latter section must be inferred. In the first place, section 3503 makes no special provision for the payment of benefits to a putative spouse. Rather, it makes only a general provision for any dependent person found to be "in good faith a member of the family or household of the [deceased] employee." In the second place, and more importantly, this suggested basis for the inference of a legislative intent that would be illogical and inconsistent with that found in the judicial interpretations of section 201 of the Probate Code and section 4702 of the Labor Code is entirely too tenuous.

The judgment is reversed and the cause is remanded with directions that a peremptory writ of mandate be issued requiring respondent to pay to appellant the special death benefit as provided by the applicable provisions of the Government Code.

Roth, P. J., and Fleming, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 22, 1970. Wright, C. J., did not participate therein.