*1079
 
 Opinion
 

 MASTERSON, J.
 

 Petitioner Housing Authority of the City of Los Angeles (L.A. Housing Authority) challenges two findings made by the Workers’ Compensation Appeals Board (Appeals Board) in favor of Roger Chandler, the L.A. Housing Authority’s Chief of Police: that the Appeals Board had jurisdiction to determine whether Chandler was an employee within the meaning of Labor Code section 4850 as part of Chandler’s application for workers’ compensation benefits, and that the L.A. Housing Authority was collaterally estopped from denying that Chandler was entitled to the benefits of Labor Code section 4850 because that issue had been resolved against the L.A. Housing Authority in a previous workers’ compensation case.
 
 [1]
 
 The L.A. Housing Authority further asserts that the earlier case had been decided incorrectly and that Chandler is not entitled to benefits under section 4850. We find that the Appeals Board properly concluded that it had authority to determine the jurisdiction issue, and that the doctrine of collateral estoppel barred the L.A. Housing Authority from denying section 4850 benefits in this case. Accordingly, we affirm.
 

 Background
 

 In a “Findings and Award” issued on February 5, 1996, a workers’ compensation judge (WCJ) determined that Roger Chandler, who had been employed as the L.A. Housing Authority’s Chief of Police, was temporarily disabled for a period of one year as a result of bruxism (a grinding of the teeth in sitiiations of stress). The WCJ requested further briefing on two issues: whether he had jurisdiction to determine if Chandler was an employee as defined by section 4850 as part of Chandler’s application for workers’ compensation benefits and, if so, whether the L.A. Housing Authority was collaterally estopped from asserting that Chandler did not come
 
 *1080
 
 within section 4850. The collateral estoppel issue emanated from the Appeals Board’s opinion and order in
 
 Chappell
 
 v.
 
 Housing Authority, City of Los Angeles
 
 (1993) W.C.A.B. No. PAS 16292, which held that an L.A. Housing Authority police officer came within the definition of section 4850. (The L.A. Housing Authority’s petition for writ of review was denied by Division Five of the Second Appellate District on July 25, 1994 (59 Cal.Comp.Cases 597), and its petition for review was later denied by the Supreme Court.) In a “Findings and Award” issued on September 3, 1996, the WCJ held that Chandler was entitled to disability benefits under section 4850.
 

 The L.A. Housing Authority petitioned the Appeals Board for reconsideration of the WCJ’s decision. On May 8,1997, the Appeals Board affirmed the September 3, 1996, findings and award on the issues pertinent to this opinion. The instant petition for writ of review followed.
 
 [2]
 

 Discussion
 

 1.
 
 Jurisdiction
 

 The L.A. Housing Authority contends that the Appeals Board was without jurisdiction to determine Chandler’s benefit status at the same time it heard his application for workers’ compensation benefits. We disagree.
 

 The parties’ arguments on this issue center on the case of
 
 Department of Justice
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1989) 213 Cal.App.3d 194 [261 Cal.Rptr. 130]
 
 (DOJ).
 
 In
 
 DOJ,
 
 a deputy attorney general with a temporary disability applied for workers’ compensation benefits, claiming that he was an employee within the meaning section 4800. (213 Cal.App.3d at p. 197.) At the time
 
 DOJ
 
 was decided, section 4800 provided a one-year leave of absence at full pay in lieu of other temporary disability benefits “[w]henever any member of the California Highway Patrol or any member of the Department of Justice falling within the ‘state safety’ class is disabled by injury arising out of and in the course of his duties . . . .” The employee’s “principal duties [must] consist of active law enforcement. . . .” (§ 4800.)
 

 In analyzing whether the Appeals Board had jurisdiction to determine the benefit status of the employee as part of his workers’ compensation application, the
 
 DOJ
 
 court first looked to section 4801. Section 4801 provides
 
 *1081
 
 that “[i]t shall be the duty of the appeals board to determine . . . upon request of the Department of the California Highway Patrol or Department of Justice . . . whether or not the disability referred to in Section 4800 arose out of and in the course of duty.” The court recognized that empowering the Appeals Board to determine an employee’s benefit category only upon request of the employer would prevent an application from being fully adjudicated in a single proceeding, and that if the Appeals Board made a finding adverse to the employee, the employee’s only remedy would be to seek a writ of mandamus in superior court pursuant to Code of Civil Procedure section 1085.
 
 (DOJ,
 
 supra, 213 Cal.App.3d at pp. 200-201.) Nonetheless, the
 
 DOJ
 
 court found that “[t]o give effect to the triggering language ‘upon request of,’ ” the Legislature necessarily intended that the initial determination of eligibility be made upon request of the employer, not the employee.
 
 (Id.
 
 at p. 200.)
 

 The
 
 DOJ
 
 court further stated that its conclusion was strengthened by comparing sections 4800 and 4801 with sections 4850 and 4851. In contrast to section 4801, section 4851 provides that “[t]he governing body of any city, county, or city and county . . . may request the appeals board to determine in any case, and the appeals board shall determine, whether or not the disability referred to in Section 4850 arose out of and in the course of duty. The appeals board shall also, in any disputed case, determine when the disability commenced and ceased, and the amount of benefits provided by this division to which the employee is entitled during the period of the disability. The appeals board shall have jurisdiction to award and enforce payment of these benefits . . . .”
 

 The
 
 DOJ
 
 court reasoned that an “important distinction between the statutory schemes for section 4800 benefits and section 4850 benefits is the role assigned to the Board. This distinction convince[d the
 
 DOJ
 
 court that] the Board has a considerably more circumscribed fact-finding role in the administration of section 4800 benefits, which does not include determining eligibility." (213 Cal.App.3d at p. 203.)
 

 The
 
 DOJ
 
 court continued: “All of the benefit schemes under consideration, Labor Code sections 4800 and 4850 and Government Code sections 21026 and 21363,[
 
 3
 
 ] utilize the fact-finding expertise of the Board. [Citation.] The Government Code sections expressly limit that role to a determination of causation. The Board’s role set forth in section 4851 has steadily increased. In 1969 the Board’s role under section 4851 was virtually
 
 *1082
 
 identical to that in section 4801: the Board determined whether the disability arose out of and in the course of duty, and in disputed cases when the disability existed. [Citation.] In 1977 the Board’s role was increased to include the determination of the amount of benefits. [Citation.] In 1985 the Board was given the jurisdiction to award and enforce payments. [Citation.] During the same period the Board’s role with respect to section 4800 benefits has remained the same. It determines only whether the disability arose out of and in the course of duty and when the disability ceases. As the Board concedes, it has no authority to determine the amount of benefits or enforce the award. [Citation.] Thus, the Board’s role under section 4801 is closer to that under Government Code sections 21026 and 21363, which is expressly limited to determining causation.
 

 “Given the extent of the express duties assigned to the Board under section 4851 in administering the benefits provided under section 4850, including determination of the amount of benefits, it may be appropriate for the Board also to determine whether an applicant falls within the generic job titles defining eligible employees. The same role is not appropriate for the Board with respect to section 4800 benefits . . . .” (213 Cal.App.3d at pp. 203-204.)
 

 We are now faced directly with the issue on which
 
 DOJ
 
 opined by analogy. In approaching this issue, our first task “is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . . The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]” (Dyna-Med,
 
 Inc.
 
 v.
 
 Fair Employment & Housing Com.
 
 (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Based on the broad duties assigned to the Appeals Board under section 4851, we may infer the Legislature intended that the Appeals Board have jurisdiction to determine whether an employee comes within the meaning of section 4850 at the same time it hears the employee’s application for workers’ compensation benefits. Moreover, the Appeals Board itself concluded that it has the power to make this determination. “It is a settled principle of statutory interpretation that ‘The contemporaneous administrative construction of a statute by an administrative agency charged with its enforcement and interpretation is entitled to great weight unless it is clearly erroneous or unauthorized.’ [Citation.]”
 
 (Wilkinson
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1977) 19 Cal.3d 491, 501 [138 Cal.Rptr. 696, 564 P.2d 848].) We find no fault with the Appeals Board’s construction on this issue. Accordingly, we find that the Appeals Board was authorized to determine whether Chandler was entitled to section 4850 benefits as part of Chandler’s application for benefits under the workers’ compensation law.
 

 
 *1083
 
 2.
 
 Collateral Estoppel
 

 The Appeals Board found that the L.A. Housing Authority was estopped from asserting that Chandler was not entitled to the benefits of section 4850 as a result of the Appeals Board’s opinion and order in
 
 Chappell
 
 v.
 
 Housing Authority, City of Los Angeles, supra,
 
 W.C.A.B. No. PAS 16292. In
 
 Chappell,
 
 the Appeals Board determined that because an L.A. Housing Authority police officer had completed training at the Los Angeles Police Academy and was a police officer as defined by Penal Code section 830.31, subdivision (d) (housing authority patrol officers are “peace officers”), she was entitled to section 4850 benefits. We conclude that the doctrine of collateral estoppel prevents us from reassessing the merits of that determination.
 

 “The doctrine of collateral estoppel precludes relitigation of an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit. [Citation.]”
 
 (Producers Dairy Delivery Co.
 
 v.
 
 Sentry Ins. Co.
 
 (1986) 41 Cal.3d 903, 910 [226 Cal.Rptr. 558, 718 P.2d 920].) The doctrine applies to an administrative determination when made by an administrative agency that is acting in a judicial capacity and resolving disputed issues which the parties have had an adequate opportunity to litigate.
 
 (People
 
 v.
 
 Sims
 
 (1982) 32 Cal.3d 468, 479 [186 Cal.Rptr. 77, 651 P.2d 321].) An opinion and order of the Appeals Board qualifies as such an administrative determination.
 
 (Unruh
 
 v.
 
 Truck Insurance Exchange
 
 (1972) 7 Cal.3d 616, 633 [102 Cal.Rptr. 815, 498 P.2d 1063];
 
 Rymer
 
 v.
 
 Hagler
 
 (1989) 211 Cal.App.3d 1171, 1179 [260 Cal.Rptr. 76].)
 

 The L.A. Housing Authority contends that collateral estoppel is inapplicable in this case. The basis of the contention is that, because Chandler is a police chief rather than a police officer (as in
 
 Chappell)
 
 and had no opportunity to participate in the
 
 Chappell
 
 litigation, the privity requirement has not been met. The contention evinces a misunderstanding of the privity requirement. It is the party
 
 against
 
 whom collateral estoppel is sought to be invoked that must be the same as or in privity with the party in the earlier proceeding. Here, that party is the L.A. Housing Authority, thereby establishing privity under the third prong of the collateral estoppel test.
 

 We suspect that, by drawing a distinction between a police chief and a police officer, the L.A. Housing Authority is actually arguing that there is
 
 *1084
 
 not sufficient identity of issues under the first prong of the collateral estoppel test.
 
 [4]
 
 However, the L.A. Housing Authority has not offered, nor can we imagine, any reason why these distinctions should make a difference to the question of whether a peace officer employed by the L.A. Housing Authority is entitled to the benefits of section 4850. (See
 
 Producers Dairy Delivery Co.
 
 v.
 
 Sentry Ins. Co., supra,
 
 41 Cal.3d at pp. 910-911.) Accordingly, we find that the first prong of the collateral estoppel test has also been satisfied.
 

 Although not briefed by the parties, there exists an argument why collateral estoppel may not be appropriately invoked. We consider the argument, but ultimately reject it.
 

 The determination in
 
 Chappell
 
 that the L.A. Housing Authority police officer involved in that case was entitled to section 4850 benefits was one of law. “ ‘ “[W]hen the issue is a question of law rather than of fact, the prior determination is
 
 not
 
 conclusive either if injustice would result or if the public interest requires that relitigation not be foreclosed. [Citations.]”’ [Citations.]”
 
 (Arcadia Unified School Dist.
 
 v.
 
 State Dept. of Education
 
 (1992) 2 Cal.4th 251, 257 [5 Cal.Rptr.2d 545, 825 P.2d 438], quoting
 
 City of Sacramento
 
 v.
 
 State of California
 
 (1990) 50 Cal.3d 51, 64 [266 Cal.Rptr. 139, 785 P.2d 522], and
 
 Consumers Lobby Against Monoplies
 
 v.
 
 Public Utilities Com.
 
 (1979) 25 Cal.3d 891, 902 [160 Cal.Rptr. 124, 603 P.2d 41], italics added.) We review this area of law to determine whether the injustice or public interest exceptions to the doctrine of collateral estoppel apply in this case.
 

 City of Sacramento
 
 v.
 
 State of California, supra,
 
 50 Cal.3d 51, involved a Court of Appeal decision in an action brought by the City of Sacramento and the County of Los Angeles. The Court of Appeal held that the state was required to reimburse these entities for the cost of a program by which they complied with a federal mandate to extend coverage under the state’s unemployment insurance law.
 
 (City of Sacramento
 
 v.
 
 State of California
 
 (1984) 156 Cal.App.3d 182 [203 Cal.Rptr. 258]
 
 (Sacramento I); City of Sacramento
 
 v.
 
 State of California, supra,
 
 50 Cal.3d 51
 
 (Sacramento II).)
 
 The state thereafter failed to reimburse the entities for the programs. The City of Sacramento then brought a new action on behalf of itself and all other local governments, seeking reimbursement and to bar the program in the absence of reimbursement payments.
 
 (Sacramento II, supra,
 
 50 Cal.3d at p. 60.)
 

 One of the issues before the court in
 
 Sacramento II
 
 was whether the doctrine of collateral estoppel precluded the state from arguing that reimbursement was not required inasmuch as the state had lost that argument in
 
 *1085
 

 Sacramento I.
 
 Recognizing that strict application of the doctrine would bar the state from making such an argument, the
 
 Sacramento II
 
 court noted that “the consequences of any error [in
 
 Sacramento
 
 /] transcend those which would apply to mere private parties. If the result of
 
 Sacramento I
 
 is wrong but unimpeachable, taxpayers statewide will suffer unjustly the consequences of the state’s continuing obligation to [provide reimbursement]. On the other hand, if the state fails to appropriate the funds to meet this obligation, and [the new program] cannot be enforced [citations], the resulting failure to comply with federal law could cost California employers millions. Under these circumstances, neither stare decisis nor collateral estoppel can permanently foreclose our ability to examine the reimbursability of [the program’s] costs.”
 
 (Sacramento II, supra,
 
 50 Cal.3d at pp. 64-65, fns. omitted.) Accordingly, the
 
 Sacramento II
 
 court proceeded to consider the matter on its merits.
 
 (Sacramento II, supra,
 
 50 Cal.3d at pp. 76-77.)
 

 In
 
 Palmdale Hospital Medical Center
 
 v.
 
 Department of Health Services
 
 (1992) 8 Cal.App.4th 1306 [10 Cal.Rptr.2d 926], an unpublished Court of Appeal decision
 
 (Modesto City Hospital
 
 v.
 
 Department of Health Services
 
 (Mar. 2, 1990) B042317) held that the Department of Health Services was precluded from adjusting Medi-Cal reimbursement payments to providers more than three years after the claim for reimbursement had been submitted. (8 Cal.App.4th at pp. 1309-1310.) The
 
 Palmdale Hospital
 
 court held that “while the state Department of Health Services was the only losing party in
 
 Modesto City Hospital,
 
 that opinion, if wrong but unimpeachable, would shift to state taxpayers the cost of overpayments to Medi-Cal provider hospitals. . . . [5D This case . . . involves a public agency’s ongoing obligation to administer statutes and regulations which were enacted for the benefit of the public. The public interest requires full litigation of the question, and application of collateral estoppel against the Department would therefore be unjust.” (8 Cal.App.4th at p. 1311.)
 

 Arcadia Unified School Dist.
 
 v.
 
 State Dept. of Education, supra,
 
 2 Cal.4th 251, involved the constitutionality of a statute that authorizes school districts to charge fees for pupil transportation. In an earlier action, a taxpayer (Mr. Salazar) had sued the State Department of Education, among others, seeking a declaration that the statute was unconstitutional. The superior court ruled that the school districts were indispensable parties and did not reach the merits. The Court of Appeal reversed, holding in a published decision that the school districts were not indispensable parties and that the statute was unconstitutional. The decision was ordered depublished by the Supreme Court.
 
 (Salazar
 
 v.
 
 Honig
 
 (May 10, 1988) B026629, review den. and opn. ordered nonpub. Sept. 1, 1988 (S006146);
 
 see Arcadia Unified School Dist.
 
 
 *1086
 
 v.
 
 State Dept. of Education, supra,
 
 2 Cal.4th at pp. 255-256.) The State Department of Education thereafter issued an advisory informing all school districts that the statute was unconstitutional. However, numerous school districts that were not parties to the
 
 Salazar
 
 action did not comply with the advisory. Twenty-five school districts as plaintiffs and the State Department of Education as defendant then agreed to submit the matter for a judicial resolution. (2 Cal.4th at p. 256.)
 

 Mr. Salazar, who had intervened in the
 
 Arcadia
 
 action, argued that the doctrine of collateral estoppel applied to the action. The Supreme Court rejected this argument based on the public interest exception to the doctrine. The court noted that uncertainty existed regarding whether all school districts were bound by
 
 Salazar
 
 v.
 
 Honig, supra
 
 (B026629), and there is a public interest in securing a uniform understanding. (2 Cal.4th at pp. 257-258.) The court continued that if it were to apply collateral estoppel, “and if
 
 Salazar
 
 v.
 
 Honig
 
 was wrongly decided, school districts would be unable to charge fees for transportation, and so they would be unable to collect those revenues, to which they are entitled by statute. Students might also be adversely affected, because those districts that could not afford to fund bus transportation out of their limited revenues might be forced to eliminate the service.”
 
 (Id.
 
 at p. 258.) “The public interest would best be served by a determination of this important issue based on the presentation of both sides of the controversy.”
 
 (Ibid.)
 
 In conclusion, the court stated that “[t]he public interest exception is an extremely narrow one; we emphasize that it is the exception, not the rule, and is only to be applied in exceptional circumstances. However, the unusually compelling facts in this case make it appropriate for us to apply the exception here.”
 
 (Id.
 
 at p. 259.)
 

 The foregoing opinions demonstrate that the instant case comes within the rule, not the exception. Rather than involving the administration of a program affecting citizens throughout the state, this case involves a single local agency. Rather than affecting questions of great economic consequence, this case involves whether or not officers of one local agency are eligible for an increased disability benefit for the period of one year. To apply the public interest exception here would mean that anytime a public agency is subject to a judicial or quasi-judicial determination with an adverse economic consequence, that agency would not be bound by the doctrine of collateral estoppel. Such an approach would effectively eviscerate the rule that collateral estoppel applies to determinations of law. Accordingly, the approach is rejected.
 
 [5]
 

 Based on the foregoing, we find that the Appeals Board properly applied the doctrine of collateral estoppel to prevent the L.A. Housing Authority
 
 *1087
 
 from asserting that Chandler was not an employee within the meaning of section 4850.
 
 [6]
 

 Disposition
 

 The Workers’ Compensation Appeals Board’s order of May 8, 1997, is affirmed.
 

 Ortega, Acting P. J., and Vogel (Miriam A.), J., concurred.
 

 Petitioner’s application for review by the Supreme Court was denied March 25, 1998.
 

 [1]
 

 Labor Code section 4850 grants to certain governmental employees who are disabled in the course of their duties a leave of absence, at full pay for up to one year, in lieu of other disability benefits. It states in pertinent part: “Whenever any city policeman, city, county, or district firefighter, sheriff or any officer or employee of a sheriff’s office, any inspector, investigator, detective, or personnel with comparable title in any district attorney’s office, or lifeguard employed year round on a regular, full-time basis by a county of the first class, who is a member of the Public Employees’ Retirement System or subject to the County Employees Retirement Law ... is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his or her duties, he or she shall become entitled, regardless of his or her period of service with the city or county, to leave of absence while so disabled without loss of salary in lieu of temporary disability payments ... for the period of the disability, but not exceeding one year . . . . fiQ . . . This section . . . excludes employees . . . whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, or otherwise, and whose functions do not clearly fall within the scope of active law enforcement service . . . [or] active firefighting and prevention service.” Undesignated section references
 
 post
 
 are to the Labor Code.
 

 [2]
 

 The Appeals Board’s order remanded the matter to the WCJ to determine the issues of attorneys’ fees and penalty. Nonetheless, our review is proper as the order was final with regard to a substantive right. (Lab. Code, §§ 5900, 5950;
 
 Safeway Stores, Inc.
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1980) 104 Cal.App.3d 528, 534-535 [163 Cal.Rptr. 750].)
 

 [3]
 

 Government Code sections 21026 and 21363 are part of the statutory scheme to determine benefits under the Public Employees’ Retirement System. The statutes limit the jurisdiction of the Appeals Board to the issue of industrial causation. (213 Cal.App.3d at p. 202.)
 

 [4]
 

 At oral argument before this court, the L.A. Housing Authority added the distinction that Chandler suffered from bruxism, while the injury in
 
 Chappel
 
 was to the applicant’s neck and back.
 

 [5]
 

 The doctrine of collateral estoppel would appear to apply equally to the holding in
 
 Chappell
 
 that the Appeals Board had jurisdiction to determine section 4850 eligibility as part
 
 *1087
 
 of an application for workers’ compensation benefits. However, the parties did not raise the doctrine with respect to that issue, and we therefore have not considered it. (See
 
 Brake
 
 v.
 
 Beech Aircraft Corp.
 
 (1986) 184 Cal.App.3d 930, 941-942 [229 Cal.Rptr. 336].)
 

 [6]
 

 By this holding, we do not mean to endorse the merits of the Appeals Board’s determination in
 
 Chappell
 
 that the applicant was entitled to benefits under section 4850. Indeed, our opinion does not constitute precedent on the issue of whether a police officer employed by some other housing authority in the State of California would come within the definition of section 4850. (Cf.
 
 Ralphs Grocery Co.
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1995) 38 Cal.App.4th 820, 827, fn. 7 [45 Cal.Rptr.2d 197].) Moreover, despite the requirement that workers’ compensation laws be liberally construed in favor of the employee (§3202), we have difficulty understanding how an employee of an entity that is not even referenced in section 4850 could be entitled to the benefits which that section provides. Nonetheless, the doctrine of collateral estoppel prevents us from addressing these concerns, which are therefore left for another day.